**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEMOS PARNEROS, | |
|           Plaintiff and<br>          Counterclaim Defendant, | No. 1:18-cv-07834 (JGK) |
|      - against - | |
| BARNES & NOBLE, INC., | |
|           Defendant and<br>          Counterclaim Plaintiff. | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR ADVANCEMENT OF ATTORNEYS' FEES AND EXPENSES**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000

*Counsel for Defendant and Counterclaim Plaintiff*
*Barnes & Noble, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

    A.    Parneros's Employment Contract Provides for Advancement and Indemnification Only for Claims in His Capacity as an Officer ............................ 3

    B.    Barnes & Noble's Bylaws Provide for Advancement and Indemnification Only for Official Capacity Claims .......................................................................... 4

    C.    Parneros Is Terminated for "Cause" on Three Grounds ...................................... 6

    D.    Parneros Files a Lawsuit Asserting Three Claims against Barnes & Noble .......... 6

    E.    Barnes & Noble Asserts Three Counterclaims against Parneros, Only Two of Which Are Brought Against Him in His Official Capacity .............................. 7

    F.    Parneros Seeks Advancement and Indemnification for All Three Counterclaims ..................................................................................................... 8

ARGUMENT .............................................................................................................. 9

I.    There Is No Support for Parneros's Demand for Advancement of 50% ............................ 9

    A.    Any Right Parneros May Have to Advancement Is Limited to the Two Counterclaims Brought Against Him in His Official Capacity .............................. 9

    B.    Parneros Should Only Be Awarded Advancement for the Minimal Incremental Litigation Expenses Incurred in Defending Against the Breach of Fiduciary Duty and Faithless Servant Counterclaims Or, At Most, 20% ........................................................................................................... 13

II.    Several Conditions Should Be Imposed Before Any Advancement Is Awarded ............. 20

    A.    Plaintiff Must Provide an Undertaking .............................................................. 20

    B.    Plaintiff Must Submit Attorney Time Sheets for Any Amounts Advanced ........ 21

    C.    Barnes & Noble Must Be Awarded Pre-Judgment Interest on Advanced Sums .................................................................................................................... 21

CONCLUSION ........................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*511 W. 232nd Owners Corp.* v. *Jennifer Realty Co.*,
No. 008034/99, 2004 WL 5709294 (N.Y. Sup. Ct. Mar. 22, 2004), *aff'd* 10
A.D.3d 573 (1st Dep't 2004) ................................................................................11

*Baker* v. *Health Mgmt. Sys., Inc.*,
98 N.Y.2d 80 (2002) .............................................................................15, 19

*Bensen* v. *Am. Ultramar Ltd.*,
No. 92 Civ. 4420 (KMW) (NRB), 1996 WL 435039 (S.D.N.Y. Aug. 2, 1996) ..............11, 12

*Bernstein* v. *TractManager, Inc.*,
953 A.2d 1003 (Del. Ch. 2007).............................................................................11

*Citadel Holding Corp.* v. *Roven*,
603 A.2d 818 (Del. 1992) ................................................................................21, 22

*Danenberg* v. *Fitracks, Inc.*,
58 A.3d 991 (Del. Ch. 2012).............................................................................19

*Happy Kids, Inc.* v. *Glasgow*,
No. 01 Civ. 6434 (GEL), 2002 WL 72937 (S.D.N.Y. Jan. 17, 2002) ..................15, 16, 17

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
82 F. Supp. 2d 227 (S.D.N.Y. 2000), *aff'd sub nom. Baker* v. *Health Mgmt.
Sys., Inc.*, 298 F.3d 146 (2d Cir. 2002) ................................................................19

*Holley* v. *Nipro Diagnostics, Inc.*,
No. CV 9679-VCP, 2015 WL 4880418 (Del. Ch. Aug. 14, 2015).........................18

*Hooper Assoc.* v. *AGS Computers*,
74 N.Y.2d 487 (1989) ................................................................................13

*Minami Intern. Corp.* v. *Clark*,
No. 88 Civ. 2135 (JSM), 1992 WL 58838 (S.D.N.Y. Mar. 16, 1992) ..................14

*O'Brien* v. *IAC/Interactive Corp.*,
No. CIV.A. 3892-VCP, 2010 WL 3385798 (Del. Ch. Aug. 27, 2010), *aff'd
sub nom. IAC/InterActiveCorp* v. *O'Brien*, 26 A.3d 174 (Del. 2011) ..............16, 17

*Qantel Corp.* v. *Niemuller*,
771 F. Supp. 1372 (S.D.N.Y. 1991).............................................................................15

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Radiancy, Inc.* v. *Azar*,
No. 1547-N, 2006 WL 4762868 (Del. Ch. Jan. 23, 2006)......................................19

*Salaman* v. *Nat'l Media Corp.*,
No. C.A. 92C-01-161, 1994 WL 465535 (Del. Super. Ct. July 22, 1994) ............................22

*Schepisi* v. *Roberts*,
2012 WL 10007766 (N.Y. Sup. Ct. May 2, 2012) ................................19

*Stifel Fin. Corp.* v. *Cochran*,
809 A.2d 555 (Del. 2002) ......................................12

*Tilden of N.J., Inc.* v. *Regency Leasing Sys, Inc.*,
237 A.D.2d 431 (2d Dep't 1997).....................................12

*Weaver* v. *ZeniMax Media, Inc.*,
No. Civ. A. 20439 (NC), 2004 WL 243163 (Del. Ch. Jan. 30, 2004) ....................................12

STATUTES

8 DEL. C. § 145(b).............................................................15, 21

8 DEL. C. § 145(e)........................................................10, 13, 21

N.Y. BUS. CORP. LAW § 722 ...........................................14, 15

N.Y. BUS. CORP. LAW § 722 cmt. (McKinney 1963) ...........................14, 15

N.Y. BUS. CORP. LAW § 723 ......................................10, 13, 14

N.Y. BUS. CORP. LAW § 724 .................................10, 13, 15, 21

N.Y. BUS. CORP. LAW § 725.................................................10, 20, 21

Defendant and Counterclaim Plaintiff Barnes & Noble, Inc. ("Barnes & Noble" or "the Company"), respectfully submits this memorandum of law in opposition to Plaintiff Demos Parneros's ("Plaintiff" or "Parneros") Motion for Advancement of Attorneys' Fees and Expenses ("Pl.'s Br."). For the reasons set forth below, Plaintiff's motion seeking advancement for 50% of his total litigation fees and expenses should be denied as the windfall he seeks is inconsistent with the parties' agreement, the Company's bylaws, and New York and Delaware law.

## PRELIMINARY STATEMENT

Plaintiff was fired by Barnes & Noble for Cause for three reasons: he sexually harassed a female employee, bullied and berated a senior executive, and sabotaged a potential acquisition of the Company. Nonetheless, Plaintiff sued his former employer, claiming that Barnes & Noble breached his employment contract by firing him for conduct he claims he did not commit, defamed him in a press release issued upon his termination, and breached its covenant of good faith and fair dealing by firing him right before a large grant in equity was due him. Barnes & Noble sought to hold Parneros accountable for his misconduct by filing three counterclaims. The first counterclaim, brought against Parneros as an officer of the Company, asserts a claim for breach of Parneros's fiduciary duties in undermining a potential transaction in order to preserve his status as CEO of a public company. The second counterclaim asserts that, as an employee and agent of the Company, Parneros acted as a faithless servant when he sabotaged the potential transaction. And the third counterclaim seeks a declaratory judgment that Barnes & Noble was justified in cancelling Parneros's equity awards under his equity award agreement because of wrongful behavior including alleged sexual harassment and bullying.

Plaintiff now demands, under his employment agreement and New York and Delaware law, advancement of attorneys' fees and costs incurred in defending against all three counterclaims. Without any explanation or detail provided, Plaintiff asserts that his affirmative

claims (for which he concedes he has no entitlement to advancement) and the Company's counterclaims "will involve work primarily relating to issues relevant to both," thereby justifying a rough apportionment of 50% between advanceable and non-advanceable fees and costs.

Plaintiff's demand is wholly inconsistent with his employment agreement, Barnes & Noble's bylaws, and New York and Delaware law.

*First*, under the plain language of his employment contract and Barnes & Noble's bylaws, Plaintiff is only potentially entitled to advancement for claims brought against him in his official capacity as a corporate officer, employee, or agent. Only *two* of the Company's three counterclaims—the breach of fiduciary duty and faithless servant claims—are asserted against Parneros in an official capacity. Plaintiff is not entitled to advancement for the Company's declaratory judgment counterclaim. The two potentially advanceable counterclaims are exclusively focused on Plaintiff's conduct in connection with thwarting a potential transaction, one of the three grounds on which Plaintiff was terminated for cause.

*Second,* given that only two out of the six claims in this litigation are potentially advanceable and that the facts relevant to those claims overlap with Plaintiff's breach of contract claim, Plaintiff's demand for advancement of 50% of his total fees and expenses for this lawsuit is clearly excessive and would provide Plaintiff with an unjustified windfall. Plaintiff is asking Barnes & Noble to subsidize his defense of direct claims asserted by the Company for his own misconduct—a result that was not contemplated by the indemnification statutes, which were enacted to protect directors and officers from the costs of defending third party and derivative claims, *not* to immunize them from the consequences of their misdeeds towards the company itself. Further, the Company's bylaws do not permit, and the case law does not support, Plaintiff's 50/50 allocation proposal, which—as he concedes—would result in Barnes & Noble being forced to

advance litigation expenses *for Plaintiff's own claims against the Company*, including claims whose facts do not overlap with the two potentially advanceable counterclaims.  Under these circumstances, any advancement award should be narrowly tailored to the incremental litigation costs incurred by Plaintiff in defending against the two potentially advanceable counterclaims that are in excess of the costs expended to prosecute his breach of contract claim.  Here, an advancement award of, at most, 20% of Plaintiff's total litigation costs (excluding the categories of expenses which he concedes should not be advanced and the costs of this motion) would be consistent with the approach taken by courts in allocating between advanceable and non-advanceable claims through rough approximation at the outset of litigation.  Moreover, any advancement award should be conditioned on the requirement that Plaintiff provide an undertaking, submit attorney time records to support any request for advancement, and agree to pay pre-judgment interest should it be determined that he must repay the advanced monies.

Accordingly, Plaintiff's motion seeking advancement for 50% of his litigation expenses should be denied.

## STATEMENT OF FACTS

**A.    Parneros's Employment Contract Provides for Advancement and Indemnification Only for Claims in His Capacity as an Officer**

Barnes & Noble hired Parneros as Chief Operating Officer ("COO") of the Company, pursuant to an employment agreement dated November 17, 2016.  (Decl. of Liza M. Velazquez ("Velazquez Decl.") (Feb. 14, 2019), Ex. A.)  On April 27, 2017, Parneros was promoted to Chief Executive Officer ("CEO") and appointed to the Board of Directors, pursuant to an amended employment agreement.  (*Id.*, Ex. B.)

Section 5 of Parneros's November 17, 2016 employment agreement, as amended on April 27, 2017, provides that he is entitled to advancement and indemnification only for actions related to conduct he engaged in "as an officer of the Company." Specifically, it states:

> You shall be indemnified by the Company, *as an officer of the Company* and its affiliates, against all actions, suits, claims, legal proceedings and the like to the fullest extent permitted by law, including advancement of all expenses, partial indemnification, indemnification following the termination of this Agreement, such indemnification shall extend to, to the fullest extent permitted by law, legal fees, costs, expenses, judgments, settlements, claim resolution payments, arbitration fees, arbitrator fees, mediation fees, negotiation fees and hold harmless obligations.

(*Id.*, Ex. A, at 7 (emphasis added).)

In addition, Parneros's employment agreement includes a choice of law provision stating that New York law governs the interpretation of the contract and any disputes arising thereunder:

> This Agreement shall be construed (both as to validity and performance) and enforced in accordance with and governed by the laws of the State of New York applicable to agreements made and to be performed wholly within the State of New York, without giving effect to any choice of law or conflict of law provision or rule . . . that would cause the application of the laws of any jurisdiction other than the State of New York.

(*Id.* at 8, Section 6.7.)

### B.   Barnes & Noble's Bylaws Provide for Advancement and Indemnification Only for Official Capacity Claims

Barnes & Noble is a Delaware corporation, and its Amended and Restated By-Laws outline the circumstances under which directors and officers may be entitled to advancement and indemnification. Article X, entitled "Indemnification of Directors and Officers," Section 1 provides that a director or officer of the Company shall be indemnified if he is sued "by reason of the fact that he or she is or was a director or an officer of the Corporation" and that indemnification

for an officer's own affirmative claims is limited to instances where the claims were "authorized

by the Board":

> Each person who was or is made a party or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative . . . *by reason of the fact that he or she is or was a director or an officer of the Corporation* . . . whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the Delaware General Corporation Law . . . against all expense, liability and loss . . . reasonably incurred or suffered by such indemnite in connection therewith; provided, however, that, except as *provided in Section 3 of this Article X with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify any such indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Board of the Corporation*.

(*Id.*, Ex. C, at 14 (emphases added).)

Likewise, Article X, Section 2 provides that an officer has the right to advancement

of expenses, if the officer otherwise has indemnification rights under Section 1 (*i.e.*, if the person

was made a party by reason of the fact that he or she is or was a director or officer), and expressly

on the condition that an undertaking is delivered:

> The right to indemnification conferred in Section 1 of this Article X shall include the right to be paid by the Corporation the expenses (including attorneys' fees) incurred in defending any such proceeding in advance of its final disposition (hereinafter, an "advancement of expenses"); provided, however, that, if the Delaware General Corporation Law requires, an advancement of expenses incurred by an indemnitee in his or her capacity as a director or officer . . . *shall be made only upon delivery to the Corporation of an undertaking* . . . by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter, a "final adjudication") that such indemnitee is not entitled to be indemnified for such expenses under this Section 2 or otherwise.

(*Id.* at 14-15.)

**C.      Parneros Is Terminated for "Cause" on Three Grounds**

In late June 2018, after a female employee's complaint that Parneros sexually harassed her, the Company's subsequent investigation, a complaint by a senior executive regarding his mistreatment by Parneros, and multiple reports concerning Parneros's misconduct at a key meeting with a potential acquiror, the Company's Board of Directors decided to terminate Parneros for "Cause," pursuant to his employment agreement.  Parneros was terminated for sexual harassment, workplace bullying, and his efforts to sabotage a potential transaction.[1] (Answer, Affirmative Defenses, & Countercl. ("Countercl.") (Oct. 30, 2018), ¶ 145, ECF No. 23).

**D.      Parneros Files a Lawsuit Asserting Three Claims against Barnes & Noble**

Subsequently, Parneros initiated this lawsuit against Barnes & Noble for breach of contract and defamation, filing his Complaint on August 28, 2018.  (Compl. (Aug. 28, 2018), ECF No. 1.)  On October 5, 2018, Parneros amended his Complaint to add a third cause of action: breach of the covenant of good faith and fair dealing.  (Am. Compl. (Oct. 5, 2018), ECF Nos. 15-16.)

First, Parneros claims that Barnes & Noble breached its contract with Parneros when it terminated him, without severance, because, in his view, his conduct did not constitute "Cause."  (Am. Compl. ¶¶ 84-87.)  In support of his claims, Parneros alleges that he did not

---

[1]      Under Paragraph 2(c)(i) of Parneros's employment agreements, Barnes & Noble could terminate his employment for Cause, *inter alia*, for:  (1) any "*intentional misconduct in connection with the performance of [his] employment duties and responsibilities that is injurious to the Company or its business or reputation*" or (2) his "*willful failure or refusal* to properly perform the duties, responsibilities or obligations of [his] employment for reasons other than Disability or authorized leave, or *to properly perform or follow any lawful direction by the Company."*  (Velazquez Decl., Ex. A, at 2 (emphases added).)

sexually harass a female subordinate and did not mistreat a senior executive who reported to him. (Am. Compl. ¶¶ 57-74, 84.)  And, in connection with the instant motion, he also now claims that he did not sabotage the potential transaction.  (*See* Decl. of Demos Parneros (Jan. 17, 2019), ECF No. 43.)

Second, Parneros claims that Barnes & Noble defamed him by issuing a press release on July 3, 2018, which stated that Parneros was dismissed for "violations of the Company's policies," that the dismissal was "not due to any disagreement with the Company regarding its financial reporting, policies or practices or any potential fraud relating thereto," and that he would not receive severance.  (Am. Compl. ¶¶ 48, 51-52, 88-92.)  Specifically, Parneros claims that the press release was defamatory because, allegedly, "[m]ultiple articles connected [his] firing to allegations of sexual harassment highlighted by the Me-Too movement or to executives at other companies who were fired for serious misconduct."  (Am. Compl. ¶ 52.)

Third, Parneros claims that Barnes & Noble breached its covenant of good faith and fair dealing by firing him shortly before a grant of $3.6 million in equity awards, to avoid the vesting of additional equity.  (Am. Compl. ¶¶ 50, 93-98.)

E.     **Barnes & Noble Asserts Three Counterclaims against Parneros, Only Two of Which Are Brought Against Him in His Official Capacity**

On October 30, 2018, Barnes & Noble filed its Answer, Affirmative Defenses, and Counterclaims, asserting three causes of action against Parneros.  First, Barnes & Noble asserts that, as an officer, Parneros breached his fiduciary duties by acting contrary to the Company's best interests in attempting to undermine a potential transaction in order to preserve his status as CEO of a public company.  (Countercl. ¶¶ 149-52.)  Second, Barnes & Noble asserts that, as an employee and agent of the Company, Parneros acted as a faithless servant when he acted adversely to Barnes & Noble's interests by attempting to sabotage the potential transaction.  (Countercl.

¶¶ 153-59.)   Third, Barnes & Noble seeks a declaratory judgment that Parneros's equity awards were subject to cancellation for his alleged sexual harassment, bullying and attempted sabotage of a potential transaction—"activity that is in conflict with or adverse to the interest of the Company"—in violation of his personal contractual obligations under the Barnes & Noble, Inc. Amended and Restated 2009 Incentive Plan ("the Plan").  (Countercl. ¶¶ 160-67.)

### F.   Parneros Seeks Advancement and Indemnification for All Three Counterclaims

On November 12, 2018, Parneros demanded advancement and indemnification for defending against *all three* of Barnes & Noble's counterclaims, citing his November 17, 2016 employment agreement—even though only two counterclaims are asserted against him in his official capacity as a corporate officer, employee, or agent.  (Velazquez Decl. ¶ 11.)

After Parneros's demand, the parties attempted to reach agreement on advancement but were unsuccessful.  (*Id.* ¶ 12.)  *Barnes & Noble made an allocation proposal of 20%*—based on an estimate of the incremental costs to Parneros of defending against the two potentially advanceable counterclaims in excess of the costs he would incur in prosecuting his own breach of contract claim, and sought an undertaking, a commitment to provide attorney timesheets to support all requests for advancement, and pre-judgment interest.  (*Id.* ¶ 14.)  But Plaintiff, claiming that "the facts relevant to the claims and counterclaims are the same," was unwilling to accept anything less than a 50% allocation, and would not agree to provide pre-judgment interest.  (*Id.* ¶¶ 13, 16.)  And while he agreed to provide an undertaking, he has not done so.  (*Id*. ¶ 17.)  Similarly, Plaintiff indicated that he might be willing to provide attorney timesheets, but has not formally agreed to this request.  (*Id.* ¶ 15.)  Plaintiff filed the present motion on January 18, 2019, seeking advancement of 50% of attorneys' fees and costs incurred in connection with this lawsuit.  The only categories of litigation expenses Plaintiff excludes from his overbroad demand for

advancement is for work pre-dating the filing of the counterclaims and work relating to plaintiff's damages.  (Pl.'s Br. 1, 6.)

## ARGUMENT

Plaintiff's demand for advancement of *half* of his total litigation expenses is not grounded in any right provided under his employment agreement, Barnes & Noble's bylaws, or New York and Delaware law.  Indeed, Plaintiff seeks a windfall that was never intended by the indemnification statutes.

At most, only two of six claims in this litigation are asserted against Plaintiff in his official capacity and are, therefore, potentially advanceable—the counterclaims for breach of fiduciary duty and faithless servant for thwarting the potential transaction—demonstrating that Plaintiff's 50% proposal is wildly overreaching.  Moreover, given that the facts relevant to these two counterclaims—namely, Plaintiff's alleged sabotage of the proposed transaction—are also relevant to Plaintiff's own claim for breach of contract (for which he has absolutely no right to advancement), any award of advancement should be limited to the minimal incremental cost to Plaintiff of defending against the two counterclaims—an allocation percentage which can reasonably be estimated at no more than 20%.  In addition, advancement should only be granted on the condition that Plaintiff provide an undertaking, attorney time records supporting any request for advancement, and pre-judgment interest should it ultimately be determined that Plaintiff is liable to Barnes & Noble and must repay the advanced monies.

## I.    There Is No Support for Parneros's Demand for Advancement of 50%

### A.    Any Right Parneros May Have to Advancement Is Limited to the Two Counterclaims Brought Against Him in His Official Capacity

Plaintiff concedes that his right to advancement is grounded in his employment agreement, subject to statutory restrictions.  (Pl.'s Br. 1.) There is no right to advancement *per se*

under either New York[2] or Delaware[3] law.  *See* N.Y. BUS. CORP. LAW §§ 723(c) & 724(c); 8 DEL. C. § 145(e).  Rather, advancement is permissive in both states, and subject to limitations in New York.  In particular, New York's Business Corporation Law prohibits indemnification or advancement "in any circumstance" if it would "be inconsistent with," *inter alia*, "an agreement or other proper corporate action," "a by-law," or the "law of the jurisdiction of incorporation of a foreign corporation" that prohibits or otherwise limits indemnification.  N.Y. BUS. CORP. LAW §§ 725(b)(1) & (2).

The plain language of Plaintiff's employment agreement limits any indemnification and advancement rights to claims that are asserted by reason of the fact that Plaintiff was a corporate officer.  Specifically, the agreement states that Plaintiff "shall be indemnified by the Company, *as an officer of the Company* and its affiliates, against all actions, suits, claims, legal proceedings and the like to the fullest extent permitted by law, including advancement of expenses

---

[2]    Section 723(c) of New York's Business Corporation Law provides that "[e]xpenses incurred in defending a civil or criminal action or proceeding *may be paid* by the corporation in advance of the final disposition of such action or proceeding upon receipt of an undertaking . . .", and Section 724(c) provides that "[w]here indemnification is sought by judicial action, *the court may allow a person such reasonable expenses*, including attorneys' fees, during the pendency of the litigation as are necessary in connection with his defense . . . if the court shall find that the defendant has by his pleadings or during the course of the litigation raised genuine issues of fact or law."

[3]    Delaware law similarly provides that expenses "incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding *may be paid* by the corporation in advance of the final disposition . . . upon receipt of an undertaking . . . ."  8 DEL. C. § 145(e).

. . . .” (Velazquez Decl., Ex. A, at 7 (emphasis added).)  Similarly, Barnes & Noble's bylaws provide that an officer has indemnification and advancement rights for proceedings brought against him or her "*by reason of fact that he or she is or was a director or an officer . . . whether the basis of such proceeding is alleged in an official capacity . . . or in any other capacity while serving as a director, officer, employee or agent.*"  (*Id.*, Ex. C, at 14 (emphasis added).)  Courts have interpreted nearly identical language as encompassing only *official* capacity claims arising out of the individual's status as a corporate officer, employee, or agent.  *See, e.g.*, *Bernstein* v. *TractManager, Inc.*, 953 A.2d 1003, 1012-13 (Del. Ch. 2007) (holding that plaintiff, who served as both a director and the company's attorney, was not entitled to advancement for claims based on actions undertaken in his role as an attorney).

Here, only two of the Company's three counterclaims are brought against Plaintiff in his official capacity as an officer or employee—the breach of fiduciary duty and faithless servant claims.  By contrast, Barnes & Noble's declaratory judgment counterclaim—for breach of Parneros's contractual obligations under the Plan—is brought against him in his personal capacity, not "by reason of the fact" that he was an officer, and is precisely the type of claim that New York and Delaware courts have held *not* to be subject to advancement.  *See, e.g.*, *511 W. 232nd Owners Corp.* v. *Jennifer Realty Co.*, No. 008034/99, 2004 WL 5709294 (N.Y. Sup. Ct. Mar. 22, 2004) (holding that defendant was not entitled to advancement for defense of claims for breach of contract and injunctive relief), *aff'd* 10 A.D.3d 573, 573 (1st Dep't 2004).[4]  The Plan (which is

---

[4]     *See also Bensen* v. *Am. Ultramar Ltd.*, No. 92 Civ. 4420 (KMW) (NRB), 1996 WL 435039, at *2 (S.D.N.Y. Aug. 2, 1996) (concluding that indemnification was not warranted for counterclaims—which included fraud, negligent misrepresentation, unjust enrichment, corporate waste, and even breach of fiduciary duty—because they concerned "an individual transaction *with* the corporation" rather than "a

applicable to employees, consultants and/or advisors of the Company) has nothing to do with Plaintiff's obligations as a corporate officer.  Nor do the allegations of sexual harassment and bullying relevant to the declaratory judgment counterclaim arise "by reason of the fact that" Plaintiff was an officer, as is required for advancement under Plaintiff's employment agreement and Barnes & Noble's bylaws.

        As the Delaware Supreme Court has ruled, unless corporate powers were used or necessary for the commission of the alleged misconduct, claims arising from an employee's personal obligations under an employment agreement are *not* brought against the individual in an official capacity and, therefore, not subject to indemnification.  *Stifel Fin. Corp.* v. *Cochran*, 809 A.2d 555, 562 (Del. 2002) (officer's "decision to breach the [employment] contract was *entirely a personal one*, pursued for his sole benefit" and therefore not indemnifiable (emphasis added)).  *See also Weaver* v. *ZeniMax Media, Inc.*, No. Civ. A. 20439 (NC), 2004 WL 243163, at *1, *3 (Del. Ch. Jan. 30, 2004) (holding that breach of employment contract claim was brought in officer's personal capacity, and therefore not indemnifiable, where officer allegedly failed to devote "full time and efforts to the business of the [c]ompany," took more than allotted vacation time, and improperly sought reimbursements).  Here, Plaintiff's corporate powers were neither used nor necessary to engage in the alleged sexual harassment or bullying behavior forming the factual basis of the declaratory judgment counterclaim.  To the extent the declaratory judgment counterclaim is partially based on Plaintiff's alleged sabotage of a potential transaction, legal work in connection

---

director or officer [acting] *for* the corporation"); *Tilden of N.J., Inc.* v. *Regency Leasing Sys, Inc.*, 237 A.D.2d 431, 431 (2d Dep't 1997) (holding that claims asserted against defendant that were based upon a personal guaranty were not "by reason of the fact that he was a director or officer of the corporation" and thus defendant was not entitled to indemnification).

with that claim would be covered by any advancement award for the breach of fiduciary duty and faithless servant counterclaims based on the same subject matter.

Because advancement with respect to the Company's declaratory judgment counterclaim is not contemplated under the plain language of Plaintiff's employment agreement or Barnes & Noble's bylaws, it is impermissible under New York and Delaware law, which provide for advancement at the corporation's sole discretion and only upon satisfaction of conditions that the corporation prescribes.  *See* N.Y. BUS. CORP. LAW §§ 723(c) & 724(c); 8 DEL. C. § 145(e).  As the New York Court of Appeals has explained, when a party is under no legal duty to indemnify, a contractual indemnification provision must be "strictly construed to avoid reading into it a duty which the parties did not intend to be assumed."  *Hooper Assoc.* v. *AGS Computers*, 74 N.Y.2d 487, 491 (1989) (holding that indemnity provision was limited to third party claims and declining to award fees in a suit between the contract parties themselves).

**B.    Parneros Should Only Be Awarded Advancement for the Minimal Incremental Litigation Expenses Incurred in Defending Against the Breach of Fiduciary Duty and Faithless Servant Counterclaims Or, At Most, 20%**

Plaintiff's demand for advancement of half of his total legal expenses[5]—based on his assertion that his "affirmative claims and the counterclaims will involve work primarily relating to issues relevant to both" and, therefore, fees and expenses "on the overlapping issues [should] be divided 50/50"—is patently excessive, and would provide Plaintiff with an unjustified windfall. (*See* Pl.'s Br. 6-8.)

---

[5]    Plaintiff concedes he is not entitled to advancement for work predating the filing of the counterclaims or relating to his damages.  (Pl.'s Br. 6.)

As an initial matter, for all the reasons discussed *supra*, Plaintiff's argument that he is owed advancement for defending against all three counterclaims finds no support in the parties' contract or under New York and Delaware law.   Plaintiff is only potentially entitled to advancement on two of three counterclaims, the breach of fiduciary duty and faithless servant— the only claims brought against him by reason of the fact that he is an officer.  Given that only *one-third* (two of the six) of the claims in this litigation are potentially advanceable, Plaintiff's demand for 50% advancement is, on its face, baseless.

Further counseling for the exercise of restraint in any advancement award is the fact that Plaintiff is demanding that the Company bankroll his defense of its direct claims against him for his own misconduct, a result never intended by the indemnification statutes.   The indemnification statutes were enacted to protect directors and officers from third party and derivative claims, not to immunize them from direct claims brought by the corporation for their misconduct.  *See Minami Intern. Corp.* v. *Clark*, No. 88 Civ. 2135 (JSM), 1992 WL 58838, *1 (S.D.N.Y. Mar. 16, 1992) (noting that the New York Business Corporation Law provisions were "not designed to provide indemnification for officers of the corporation who are sued for their own wrongful conduct and breach of their contractual obligations to the corporation.").  The relevant New York Business Corporation Law statutes authorize indemnification and advancement for "action[s] by or in the right of" the corporation.  *See* N.Y. BUS. CORP. LAW Section 722(c) (authorizing indemnification for directors and officers, if certain conditions are met); N.Y. BUS. CORP. LAW Section 723 (permitting advancement for an action which qualifies for indemnification under Section 722(c), if certain conditions are met).  The legislative comments to Section 722(c) demonstrate that this language was intended to cover derivative claims.  *See* N.Y. BUS. CORP. LAW § 722 cmt. (McKinney 1963) (current version at N.Y. BUS. CORP. LAW § 722(c) (McKinney Supp.

1993) ("[T]his section is a substantial re-enactment of Gen. Corp. L. § 63, modified to the extent that it has been made applicable to derivative actions only . . ." ). *See also Baker* v. *Health Mgmt. Sys., Inc.*, 98 N.Y.2d 80, 84 n.1 (2002) (explaining that Section 722(c) governs derivative actions). The relevant Delaware General Corporation Law statutes borrow their language providing for indemnification rights from the New York statute.   Although courts applying New York and Delaware law have nevertheless interpreted these indemnification statutes to permit advancement for direct claims, we are unaware of any cases expressly so holding that are binding on this Court.

Under New York and Delaware law, an indemnified party is only entitled to advancement for "reasonable" expenses that are "necessary in connection with his defense" of indemnifiable claims.  N.Y. BUS. CORP. LAW § 724(c); 8 DEL. C. § 145(b); *see also Qantel Corp.* v. *Niemuller*, 771 F. Supp. 1372, 1374-75 (S.D.N.Y. 1991) (denying advancement motion because former officer and director failed to demonstrate that the fees and expenses he requested were "reasonable . . . [and] necessary in connection with his defense," as required under Section 724(c)). Accordingly, courts determine apportionment by examining specific factual and legal issues implicated by advanceable and non-advanceable claims.  *See, e.g.*, *Happy Kids, Inc.* v. *Glasgow*, No. 01 Civ. 6434 (GEL), 2002 WL 72937, at *4-5 (S.D.N.Y. Jan. 17, 2002).

Here, the two claims for which Plaintiff is potentially entitled to advancement exclusively concern Plaintiff's misconduct in sabotaging a potential transaction.  These facts are also relevant to Plaintiff's breach of contract claim.  Given this overlap, any legal work attributable to the allegations that he sabotaged a potential transaction will be used by Plaintiff not only for his defense of the two advanceable counterclaims, but also for the prosecution of his non-advanceable breach of contract claim.  Because Plaintiff has no right to advancement for his breach of contract

claim, it would clearly be inappropriate to award Plaintiff advancement for the entirety of the litigation expenses attributable to his defense of the two counterclaims.

Any advancement award for the breach of fiduciary duty and faithless servant counterclaims should not also finance Plaintiff's affirmative breach of contract claim against the Company. Thus, any allocation percentage should be limited to the minimal incremental cost to Plaintiff of defending against the two counterclaims in excess of the litigation expenses that he would incur to prosecute his breach of contract claim—a reasonable estimate of which would be no greater than 20%. This approximation would be consistent with the "rough" precision approach taken by courts in allocating between advanceable and non-advanceable claims at the outset of litigation, including the two cases on which Plaintiff relies for his 50/50 proposal—*Happy Kids*, 2002 WL 72937, at *4-5 and *O'Brien* v. *IAC/Interactive Corp.*, No. CIV.A. 3892-VCP, 2010 WL 3385798, at *13-15 (Del. Ch. Aug. 27, 2010), *aff'd sub nom. IAC/InterActiveCorp* v. *O'Brien*, 26 A.3d 174 (Del. 2011).

In *Happy Kids*, the indemnified officer had not brought claims against his former employer and there were only two claims at issue (both asserted by the company), breach of fiduciary duty and fraud in the inducement, only one of which (fiduciary duty) was advanceable. 2002 WL 72937, at *4-5. The court directed the defendant, the indemnified party, to establish separate billing matters for litigation expenses (1) "clearly identifiable" with an advanceable breach of fiduciary duty claim, (2) "clearly identifiable" with a non-advanceable fraud claim, and (3) "general litigation activity" for overlapping issues that are not specifically attributable to either claim. *Id.* at *5. The court ruled that the defendant should be advanced all fees for the advanceable claim, none for the non-advanceable claim, and half of the fees for the general litigation activity. *Id.* Similarly, here, any legal expenses related to the two potentially advanceable counterclaims

will also be relevant to the prosecution of Plaintiff's non-advanceable breach of contract claim. Thus, these expenses are directly analogous to the third litigation expenses category in *Happy Kids*, for which the "overlap of issues and legal work" between advanceable and non-advanceable claims warranted a reduced advancement award. *See id.* Here, there are additional circumstances justifying a further reduction of any advancement award for the two counterclaims because, otherwise, the Company would be subsidizing the prosecution of Parneros's affirmative claims against it—which was not the case in *Happy Kids* since the officer had not sued his former employer. *O'Brien* involved an assessment of indemnification, not an allocation for purposes of advancement. 2010 WL 3385798, at *13. But, as in *Happy Kids*, the *O'Brien* court carefully considered specific facts, such as the number of hours worked on the disputed claims, in determining the appropriate indemnification amounts. *Id.* at *13-14.

   While Plaintiff does not argue that he is entitled to advancement for his affirmative claims (nor would he have any legal or factual basis to do so), he admits that his demand for 50% of his total litigation costs is based on the assumption that the Company should nevertheless fund half of the litigation expenses for the prosecution of his case, given his position that all three counterclaims are advanceable and their factual overlap with his three claims. (*See* Pl.'s Br. 7-8.) As an initial matter, Plaintiff's demand is impermissible under the Company's bylaws which prohibit indemnification and advancement for his affirmative claims. Section 1 of the bylaws provide that the Company may only indemnify an officer or director "in connection with a proceeding (or part thereof) initiated by such indemnitee" if the "proceeding (or part thereof) was authorized by the Board." (*See* Velazquez Decl., Ex. C, at 14.) As the Board did not authorize Parneros's lawsuit against the Company, Parneros is not entitled to any indemnification or advancement for the expenses of his own affirmative claims. As purported support for his 50/50

proposal, he cites cases where courts have permitted advancement for non-advanceable claims. (*See* Pl.'s Br. 7-8.)  None of those cases is binding on this Court, but in any event, each is entirely distinguishable as they involve circumstances (not present here) where apportioning among claims would impose a significant burden on the court or where the advanceable and non-advanceable claims were mirror images of one another.  In none of Plaintiff's cases did a court order the windfall Plaintiff seeks here: advancement for fees and expenses attributable to the prosecution of the officer's own claims against his former employer, including claims (like Plaintiff's defamation and breach of the covenant and good faith and fair dealing claims) where the facts do not overlap with claims for which there is any right to advancement.  (*See id.* 6-8.)

In *Holley* v. *Nipro Diagnostics, Inc.*, for example, the plaintiff sought advancement for costs incurred in defending against an SEC and a criminal action based on violations of insider trading laws.  No. CV 9679-VCP, 2015 WL 4880418, *1 (Del. Ch. Aug. 14, 2015).  The court noted that the two actions stemmed from the same course of conduct, the plaintiff's defense of the two actions initially proceeded in tandem, and the court would have had to "second-guess, on a hindsight basis, an attorney's judgment concerning whether to retain an expert for a specific purpose."  *Id.* at *2.  Based on those factors, the court found that determining apportionment at the advancement stage would impose a "significant burden on the Court" and therefore declined to do so.  *Id.* at *1.  The other cases cited by Plaintiff involved advanceable and non-advanceable claims that were essentially the "converse" or "mirror" image of each other, making it impossible for the court to allocate litigation expenses between advanceable and non-advanceable claims.  *See, e.g.,*

*Schepisi* v. *Roberts*, 2012 WL 10007766 (N.Y. Sup. Ct. May 2, 2012), at \*5; *Radiancy, Inc.* v. *Azar*, No. 1547-N, 2006 WL 4762868, at \*4 (Del. Ch. Jan. 23, 2006).[6]

      Here, apportionment between advanceable and non-advanceable claims would not be burdensome to determine.  Only two out of six claims in the lawsuit are advanceable.  Moreover, this is not a situation where the universe of advanceable and non-advanceable claims are "mirror" images of each other, such that it would be difficult to distinguish between advanceable and non-advanceable legal work.  Here, the facts relevant to the two potentially advanceable counterclaims exclusively concern Plaintiff's alleged sabotage of the proposed transaction and are relevant to only one of Plaintiff's three affirmative claims.  Litigation expenses attributable to four of the six claims in this lawsuit—Plaintiff's three claims and the Company's declaratory judgment counterclaim—as well as to allegations of sexual harassment and bullying are clearly non-advanceable, thus further demonstrating that Plaintiff's demand is improper.[7]

---

[6]    The other case that Plaintiff cites, *Danenberg* v. *Fitracks, Inc.,* 58 A.3d 991 (Del. Ch. 2012) is entirely inapposite (awarding advancement for work that the indemnified former officer's counsel performed on behalf of his client which also furthered the defense of other third-party defendants in the case, based on the determination that "[a]lthough other third-party defendants were named, the target was clearly Danenberg,").  *Id.* at 998-1000.

[7]    While Plaintiff also seeks advancement for work on this motion, as the New York Court of Appeals has explained on certification from the Second Circuit, New York's indemnification statute does not provide for "fees on fees."  *Baker* v. *Health Management System*, 98 N.Y.2d 80, 87-88 (2002) (reasoning that nothing in the language of Section 722(a) or the legislative history "indicate[s] that the Legislature intended to provide [this] coverage)"; *see also In re Health Mgmt. Sys., Inc. Sec. Litig.*, 82 F. Supp. 2d 227, 236 (S.D.N.Y. 2000), *aff'd sub nom. Baker* v. *Health Mgmt. Sys., Inc.*, 298 F.3d 146 (2d Cir. 2002).  To the

## II.   Several Conditions Should Be Imposed Before Any Advancement Is Awarded

### A.   Plaintiff Must Provide an Undertaking

Plaintiff's motion seeking advancement should be denied unless he provides an undertaking, which is a prerequisite to advancement under Barnes & Noble's bylaws and Delaware and New York statutory law. Both Delaware law and the bylaws authorize indemnification of an officer only upon receipt of an undertaking, and therefore, in these circumstances, an undertaking is also required under New York law.

Under Section 725(b) of New York's Business Corporation Law, indemnification is not authorized by statute if it would be inconsistent with a company's bylaws, N.Y. BUS. CORP. LAW § 725(b)(2), or "the law of the jurisdiction of incorporation of a foreign corporation which prohibits or otherwise limits such indemnification," *id.* § 725(b)(1).  Here, requiring advancement without an undertaking would be inconsistent both with Barnes & Noble's bylaws and the law of its incorporation (Delaware).  Pursuant to the Company's bylaws, Barnes & Noble may only advance expenses to an officer upon delivery of an undertaking.  (*See* Velazquez Decl., Ex. C, at 14 ("[I]f the Delaware General Corporation Law requires, an *advancement of expenses* incurred by an indemnitee in his or her capacity as a director or officer . . . *shall be made only upon delivery to the Corporation of an undertaking*.") (emphases added).)  Additionally, Section 145(e) of the Delaware General Corporation Law requires that an officer or director provide an undertaking to repay as a condition for seeking advancement: "[e]xpenses (including attorneys' fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or

---

extent fees on fees are contemplated by Barnes & Noble's bylaws, under no circumstances would they be justified where, as here, the indemnified party's demand for advancement is neither consistent with the language of the parties' agreement nor ripe as no undertaking has been provided.

investigative action, suit or proceeding *may be paid by the corporation in advance* of the final disposition of such action, suit or proceeding *upon receipt of an undertaking*. . . ."[8]

### B.    Plaintiff Must Submit Attorney Time Sheets for Any Amounts Advanced

Plaintiff is only entitled to advancement for "reasonable" expenses that are "necessary in connection with his defense."  N.Y. BUS. CORP. LAW § 724(c); *see also* 8 DEL. C. § 145(b).  In order to determine whether advancement requests are reasonable, courts have required the indemnitee to provide the indemnitor with attorney time records.  *See, e.g.*, *Citadel Holding Corp.* v. *Roven*, 603 A.2d 818, 825 (Del. 1992).  This Court should similarly require Plaintiff to submit time sheets for any fees he requests to be advanced, redacted as necessary to preserve privilege.[9]

### C.    Barnes & Noble Must Be Awarded Pre-Judgment Interest on Advanced Sums

Because the New York indemnification statutory scheme dictates that indemnification or advancement cannot be made where it would conflict with the law of the state of the corporation's incorporation, *see* N.Y. BUS. CORP. LAW § 725(b)(1), Delaware law is

---

[8]    Parneros's employment agreement's silence as to an undertaking does not override the express requirement imposed by the bylaws and Delaware law.

[9]    Plaintiff's counsel has stated that they are not representing Plaintiff on a contingency basis, but rather, that Plaintiff is responsible for paying attorneys' fees as they are incurred.  (Velazquez Decl. ¶ 14.) To the extent that Plaintiff's counsel's billing arrangement with Plaintiff differs from this representation for any of the claims in this lawsuit, Barnes & Noble reserves the right to further object to advancement on the ground that fees for which he is seeking advancement have not been "incurred," as required by Section 2 of Barnes & Noble's bylaws.  (*Id.*, Ex. C, at 14.)

pertinent to the question of whether pre-judgment interest should be required.  Under Delaware law, companies are entitled to pre-judgment interest on the sums that are advanced, should it ultimately be determined that the directors or officers need to repay, and "prejudgment interest is awarded as a matter of right."  *Citadel*, 603 A.2d at 826 (citing *Moskowitz* v. *Mayor & Council of Wilmington*, 391 A.2d 209 (Del. 1978)) (noting that the company would be entitled to pre-judgment interest should it be ultimately determined that officer must repay some or all of the advances); *see also Salaman* v. *Nat'l Media Corp.*, No. C.A. 92C-01-161, 1994 WL 465535, at *1 (Del. Super. Ct. July 22, 1994) (same).  Accordingly, Barnes & Noble is entitled to pre-judgment interest on any sums advanced to Parneros, should it be ultimately determined that Parneros must repay some or all of the advances.

## <u>CONCLUSION</u>

For the reasons set forth above, Barnes & Noble respectfully requests that the Court deny Plaintiff's Motion for Advancement of Attorneys' Fees and Expenses seeking 50% of his litigation costs.  Any award of advancement should be limited, at most, to 20% of his total litigation expenses and should not include any work before October 30, 2018 (when Barnes & Noble filed its Answer and Counterclaims), any work relating to Plaintiff's damages, or fees for this motion. Furthermore, advancement should only be awarded on the condition that Plaintiff provide: (i) an undertaking; (ii) attorney time records (redacted for privilege, as appropriate) to support all sums being requested; and (iii) his agreement to pay pre-judgment interest should it ultimately be determined that Plaintiff must repay the advanced monies.

Dated:   New York, New York
             February 15, 2019

                                              PAUL, WEISS, RIFKIND, WHARTON &
                                                GARRISON LLP

                                              By:   /s/ Jay Cohen
                                                    Jay Cohen
                                                    Liza M. Velazquez
                                                    Maria H. Keane


                                              1285 Avenue of the Americas
                                              New York, New York 10019-6064
                                              (212) 373-3000
                                              jaycohen@paulweiss.com
                                              lvelazquez@paulweiss.com
                                              mkeane@paulweiss.com

                                              *Attorneys for Defendant and*
                                              *Counterclaim Plaintiff Barnes & Noble, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Jay Cohen, a partner of Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys for Barnes & Noble, Inc., hereby certifies that the foregoing brief complies with all applicable formatting rules, including the Individual Practices of Judge John G. Koeltl.  The total number of words in the foregoing brief, based upon the word count of the word-processing system used to prepare the brief, is 6,984.


Dated:   New York, New York
         February 15, 2019

                                        PAUL, WEISS, RIFKIND, WHARTON &
                                          GARRISON LLP

                                        By:   /s/ Jay Cohen
                                              Jay Cohen
                                              Liza M. Velazquez
                                              Maria H. Keane

                                        1285 Avenue of the Americas
                                        New York, New York 10019-6064
                                        (212) 373-3000
                                        jaycohen@paulweiss.com
                                        lvelazquez@paulweiss.com
                                        mkeane@paulweiss.com

                                        *Attorneys for Defendant and*
                                        *Counterclaim Plaintiff Barnes & Noble, Inc.*