PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS     NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER

212-373-3096

WRITER'S DIRECT FACSIMILE

212-492-0096

WRITER'S DIRECT E-MAIL ADDRESS

lvelazquez@paulweiss.com

September 20, 2019

Via ECF

The Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      *Parneros* v. *Barnes & Noble, Inc.,* No. 1:18-cv-07834 (JGK)(GWG)

Dear Judge Gorenstein:

      Pursuant to this Court's instruction during the September 13, 2019 oral argument on Plaintiff and Counterclaim Defendant Demos Parneros's ("Plaintiff") motion to compel, we write on behalf of Defendant and Counterclaim Plaintiff Barnes & Noble, Inc. ("Barnes & Noble" or the "Company") to provide supplemental briefing on the issue of whether Barnes & Noble has waived the privilege with respect to the June 27, 2018 memorandum prepared by the Company's outside counsel, Paul, Weiss, Rifkind, Wharton & Garrison, LLP (the "Paul, Weiss memorandum") either through its pleading or its defense to Plaintiff's defamation claim. For all the reasons set forth below and in Barnes & Noble's Memorandum of Law in Opposition to Plaintiff's Motion to Compel dated May 31, 2019, no waiver can be found here.

I.    THE STANDARD FOR SHOWING AT ISSUE OR IMPLIED WAIVER

      It is the burden of *Plaintiff*, the party arguing for waiver, to demonstrate that "the opposing party relies on the privileged advice" to prove a claim or a defense. *See In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008); *see also Deutsche Bank Tr. Co. of Ams.* v. *Tri-Links Inv. Tr.*, 43 A.D.3d 56, 64 (1st Dep't 2007) (noting that "at-issue waiver occurs when the party has asserted a claim or defense that he intends to prove by use of the privileged materials"). Where a party is not asserting a claim or defense that it

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

intends to prove by use of the privileged materials, courts typically do not find "at issue" waiver. *See, e.g.*, *Windsor Secs., LLC* v. *Arent Fox*, 273 F. Supp. 3d 512, 519 (S.D.N.Y. 2017) (finding no "at issue" waiver where the plaintiff "made clear" that it did not intend to rely on any of its privileged communications to prove its claims). Tellingly, Plaintiff has not cited a case where "at issue" waiver was found in the absence of an affirmative defense asserting reliance on the advice of counsel, a party's belief in the legality of its conduct, the adequacy of its investigation in response to a discrimination claim, or by disclosure of the substance of counsel's advice—none of which has occurred here. *See, e.g.,* cases cited by Plaintiff (Pl.'s Br. (May 17, 2019), at 10-12, ECF No. 75; Pl.'s Reply Br. (June 14, 2019), at 7-12, ECF No. 8).[1]

Courts will find waiver in the narrowest of circumstances: where "the truth of a party's assertion can *only* be assessed by examination of privileged communications, or where the assertion of a claim in fairness requires examination of protected communications." *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 WL 601452, at *3 (Bankr. S.D.N.Y. Feb. 20, 2007) (internal quotation marks and citations omitted) (emphasis added). *See also In re Omnicom Grp., Inc. Secs. Litig.*, 233 F.R.D. 400, 413 (S.D.N.Y. 2006) (an implied waiver occurs when a party "makes factual assertions, the truthfulness of which may be assessed *only* by an examination of the

---

[1] *See In re Cty. of Erie*, 546 F.3d at 228-30 (Section 1983 action; no waiver found); *Johnson* v. *J. Walter Thompson USA*, *LLC*, 16 Civ. 1805 (JPO)(JCF), 2017 WL 3432301, at *8 (S.D.N.Y. Aug. 9, 2017) (employment discrimination case; no waiver with respect to categories of documents that could be relevant only to the accuracy of the findings in outside counsel's report; finding potential waiver as to the communications related to outside counsel's conclusions *if* outside counsel's report is introduced into evidence); *Scott* v. *Chipotle Mexican Grill*, *Inc*., 67 F. Supp. 3d 607, 614-15 (S.D.N.Y. 2014) (finding waiver based on assertion of FLSA statutory defenses based on advice of counsel); *Koumoulis* v. *Indep. Fin. Mktg. Grp.,* 295 F.R.D. 28, 47-48 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (employment discrimination case; waiver found based on assertion of *Farragher/Ellerth* affirmative defense); *Arista Records LLC* v. *Lime Grp. LLC*, No. 06 Civ. 5936, 2011 WL 1642434, at *1-*3 (S.D.N.Y. Apr. 20, 2011) (waiver based on defendant's asserted good faith belief in lawfulness of conduct under copyright infringement test); *Vill. Bd. of Vill. of Pleasantville* v. *Rattner*, 130 A.D.2d 654, 655 (2d Dep't 1987) (zoning case; waiver found through reliance upon advice of counsel defense); *Orco Bank* v. *Proteinas Del Pacifico*, 179 A.D.2d 390, 390 (1st Dep't 1992) (bank fraud case; waiver of attorney-client privilege where plaintiff "plac[ed] the subject matter of counsel's advice in issue" and made "selective disclosure of such advice"). *See also Electro* v. *Sci. Indus., Inc.* v. *Gen. Scanning Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997) (patent infringement case; concluding that the "substantive disclosures of counsel's advice," *i.e.*, revealing "the bottom line of the lawyer's opinion" was "critical" to the finding of waiver); *E.I. DuPont de Nemours & Co.* v. *Kolon Indus., Inc.*, 269 F.R.D. 600, 607 (E.D. Va. 2010) (trade secret case finding waiver where plaintiff "chose to broadcast the substance of [its] communications [with the FBI] to the public").

privileged communications or documents" (internal quotation marks and citations omitted) (emphasis added)).

Plaintiff cannot meet this burden here.

## II. BARNES & NOBLE IS NOT RELYING ON PRIVILEGED MATERIALS TO PROVE A CLAIM OR DEFENSE

Plaintiff makes two arguments in his attempt to obtain the Paul, Weiss memorandum. First, he claims that Barnes & Noble has waived the privilege attached to this memorandum because Barnes & Noble stated in the preamble of its Answer, Affirmative Defenses, and Counterclaims dated October 30, 2018 that the Board's statements in its July 3, 2018 press release were clearly accurate and "made in good faith." (*See* Pl.'s Br. 10; Pl.'s Reply Br. 8.) Second, Plaintiff argues that Barnes & Noble has also waived the privilege because the press release noted that the termination was taken by the Board "who were advised by the law firm Paul, Weiss." (*See* Pl.'s Br. 12; Pl.'s Reply Br. 11.) Neither argument has merit. Barnes & Noble has repeatedly stated that it is not relying on any privileged materials to prove its claims or defenses. (*See, e.g.*, Def.'s Pre-Mot. Ltr. (Apr. 24, 2019), at 3, ECF No. 64; Def.'s Br. (May 31, 2019), at 22, ECF No. 83.) It is not asserting a "good faith" defense based on its belief that its actions were lawful, nor is it asserting reliance on counsel's advice to defend against Plaintiff's defamation claim.

### A. BARNES & NOBLE HAS NOT RAISED A "GOOD FAITH" DEFENSE

Plaintiff argues that Barnes & Noble has asserted a "good faith" defense, pointing only to a descriptive sentence in the two-page preamble of its Answer stating that the "Board's July 3, 2018 announcement that Plaintiff had been terminated 'for violations of the Company's policies' and would not receive severance was clearly accurate and clearly made in good faith." This sentence does not effect a waiver. Nowhere in the Affirmative and Other Defenses listed in its Answer does Barnes & Noble assert an affirmative defense based on its good faith belief in the lawfulness of its actions. As such, this case is clearly distinguishable from *United States* v. *Bilzerian*, where the Second Circuit agreed with the lower court that defendant's "testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue." 926 F.2d 1285, 1292-93 (2d Cir. 1991). Here, unlike the defendant in *Bilzerian*, Barnes & Noble has not asserted a defense that is predicated on a good faith belief in the legality of its actions nor have any Barnes & Noble's witnesses testified in depositions that the actions they took were predicated on such a belief.

Barnes & Noble's passing statement that it acted in good faith was merely intended to deny Plaintiff's myriad accusations in his Amended Complaint that the Company engaged in intentional misconduct. *See, e.g.*, Am. Compl. (Oct. 6, 2018), ECF No. 16, ¶¶ 2, 56, 89. A party does not put privileged information at issue merely by denying claims of bad faith or intentional misconduct. *See Bovis Lend Lease, LMB, Inc.*

v. *Seasons Contracting Corp.*, No. 00 Civ. 9212 (DF), 2002 WL 31729693, at *17 (S.D.N.Y. Dec. 5, 2002) ("Generally, where a party does not itself place in issue the matter as to which the privileged communications are relevant, the privilege is not waived.")

Moreover, no waiver can be found here because the truth of the factual assertion that the press release was issued in "good faith" is not one that can only be tested by examination of a privileged communication. Plaintiff has not made (because he cannot) any argument as to why fairness would *require* invasion of Barnes & Noble's attorney-client privilege to refute the factual assertion that the press release was issued in good faith. Plaintiff was free to ask each of the four Board members who were deposed questions that would have elicited facts and/or their views as to whether or not the press release was issued in good faith.[2] Plaintiff's argument that the privileged advice the Board received could be relevant to show the Board's state of mind when it issued the press release is insufficient as a matter of law. Relevance is not the standard for finding waiver. Rather, the Second Circuit and District Courts have made clear that the mere fact that privileged information is relevant to a claim or defense does not give rise to implied waiver. *See In re Cty. of Erie*, 546 F.3d at 229; *see also Leviton Mfg. Co.* v. *Greenberg Traurig LLP*, No. 09 Civ. 8083(GBD)(THK), 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010) ("[S]imply because privileged information is relevant to a claim or defense in the case does not give rise to an implied waiver; rather, to forfeit privilege, 'the party must *rely* on privileged advice from his counsel to make his claim or defense.'" (quoting *In re Cty. of Erie*, 546 F.3d at 229) (emphasis in original)); *In re Adelphia Commc'ns Corp.*, 2007 WL 601452, at *6 ("The fact that Adelphia would find it useful to learn what Lucent told its lawyers, or vice-versa, does not raise 'fairness' concerns that would require waiver of the privilege.").

### B. PLAINTIFF'S ASSERTION OF A DEFAMATION CLAIM DOES NOT EFFECT A WAIVER OF BARNES & NOBLE'S ATTORNEY-CLIENT PRIVILEGE

Plaintiff also contends that Barnes & Noble has waived the privilege because the July 3, 2018 press release that announced that Plaintiff was terminated for violating Company policies also noted that the termination was taken by the Board "who were advised by the law firm Paul, Weiss." Plaintiff claims this shows that Barnes & Noble is relying on advice of counsel to defend against his defamation claim. This is

---

[2] Indeed, Plaintiff's counsel asked the Board members other questions concerning the press release. *See*, *e.g.*, Ex. A, 321:21-327:14 (Plaintiff's counsel asked Al Ferrara numerous questions about the Board's decision-making process with respect to the press release, including whether there were any Board discussions concerning the press release at the June 27, 2018 meeting or subsequent to it. Mr. Ferrara testified about such discussions, why they chose not to mention the sexual harassment grounds for Plaintiff's termination, that the Board received at least one draft of the press release, and that he called the Senior Vice President of Corporate Communications to approve the press release).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

5

incorrect. Barnes & Noble is not claiming as a defense that it relied on the advice of counsel in terminating Plaintiff or in issuing the statements made in the press release.

Plaintiff's arguments turn the law of waiver on its head.

As an initial matter, Barnes & Noble did not inject the press release into this litigation nor did it put the statements in the press release "at issue." *Plaintiff* did, through his defamation claim.

To succeed on his defamation claim, Plaintiff must show: (1) a false statement; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the defendant; and (4) defamation *per se* or special damages. *Thai* v. *Cayre Grp. Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). *Chapadeau* v. *Utica Observer-Dispatch*, 38 N.Y.2d 196 (1975), sets forth the heightened standard Plaintiff must satisfy to establish *fault*. *See, e.g.*, *Konikoff* v. *Prudential Ins. Co. of Am.*, 234 F.3d 92, 94 (2d Cir. 2000) (holding that the defendant "did not act with fault sufficient to permit liability under the standard promulgated by the New York Court of Appeals in *Chapadeau*"). Under *Chapadeau*, where—as here—the contents of the allegedly defamatory statements are within the sphere of legitimate public concern, a plaintiff can recover only by establishing, "by a preponderance of the evidence, that [the defendant] acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." 38 N.Y.2d at 199. The law is clear that it is *Plaintiff's* burden to prove gross irresponsibility. *See, e.g.*, *Mott* v. *Anheuser-Busch, Inc.*, 910 F. Supp. 868, 875 (N.D.N.Y. 1995), *aff'd*, 112 F.3d 504 (2d Cir. 1996).

The mere defense of a defamation claim does not effect a waiver of the attorney-client privilege. Indeed, in *none* of the defamation cases that Plaintiff cites in the voluminous briefing he has submitted has a court applying New York law found waiver of privilege where the defendant's reliance on the advice of counsel was not affirmatively asserted as a defense.[3] *Alcor Life Extension Foundation* v. *Johnson* is

---

[3] *See Peters* v. *Baldwin Union Free Sch. Dist.*, 320 F.3d 164 (2d Cir. 2003) (defamation case with no discussion of *Chapadeau* or waiver); *Albert* v. *Loksen*, 239 F.3d 256, 271-72 (2d Cir. 2001) (defamation case involving qualified privileged communication related to internal employee-related communications; no discussion of waiver); *Fine* v. *ESPN, Inc.*, 11 F. Supp. 3d 209 (N.D.N.Y. 2014) (defamation case; no discussion of waiver); *Fleming* v. *Hymes-Esposito*, No. 12 Civ. 1154 (JPO), 2013 WL 1285431 (S.D.N.Y. Mar. 29, 2013) (defamation case with no discussion of waiver); *Gruss* v. *Zwirn*, 276 F.R.D. 115, 134-35 (S.D.N.Y. 2011), *rev'd in part*, 2013 WL 3481350 (S.D.N.Y. July 10, 2013) (defamation case involving *Chapadeau*; waiver found based on asserted reliance on advice of counsel defense and defendants' voluntary production of outside counsel's documents); *Boule* v. *Hutton*, 138 F. Supp. 2d 491 (S.D.N.Y. 2001) (defamation case with no discussion of waiver); *Hoesten* v. *Best*, 34 A.D.3d 143 (1st Dep't 2006) (defamation case with no discussion of waiver); *Dawson* v. *New York Life Ins. Co.*, 901 F. Supp. 1362, 1369-70 (N.D. Ill.1995) (defamation case involving qualified privilege concerning internal employee-related communications; no

instructive. 2014 WL 2050661, at *8 n.4 (N.Y. Sup. 2014), *aff'd*, 136 A.D.3d 464 (N.Y. App. Div. 2016). In *Alcor*, a defamation case involving the *Chapadeau* "gross irresponsibility" standard, the court held that there was no waiver where the defendant had merely stated the fact of consultation with counsel and was not asserting an advice of counsel defense. *Id.* So too here. Barnes & Noble's press release only stated the fact of outside counsel's engagement, *not* the substance of outside counsel's advice. (*See* Decl. of Anne Clark (May 17, 2019), Ex. 7, ECF No. 77-7 (July 3, 2018 press release). Moreover, Barnes & Noble is not asserting an advice of counsel defense to refute any element of Plaintiff's defamation claim. *Alcor* teaches that no waiver can be found in these circumstances. Neither *Fine* v. *ESPN, Inc.* nor *Boule* v. *Hutton* lead to a different result. In neither of those defamation cases did the court find, let alone discuss, waiver. *See* 11 F. Supp. 3d 209; 138 F. Supp. 2d 491.

Nor can Plaintiff show that he requires access to the privileged advice of Barnes & Noble's attorneys in order to challenge Barnes & Noble's factual assertions in defending against his defamation claim.

Barnes & Noble intends to demonstrate the truth of the statement in its July 3 press release that Plaintiff was terminated for violations of Company policies through the testimony of witnesses and non-privileged documents, all of which are available to Plaintiff in discovery. Eleven Barnes & Noble current and former employees have testified as to the sexual harassment and/or bullying they experienced and/or witnessed. They have also testified as to their personal observations of Plaintiff's attitude towards the Potential Transaction and his behavior in meetings with the Potential Acquiror. Four Board members involved in making the decision to terminate Plaintiff's employment have testified as to the events leading up to Plaintiff's termination, the process the Board followed, and the numerous non-privileged discussions that formed the basis of their decision to terminate Plaintiff. *See, e.g.*, Ex. B at 246:25- (Al Ferrara's testimony about what he heard from Barnes & Noble executives—including the General Counsel, the VP of Stores, and the Chief Financial Officer—about Plaintiff's conduct at the June 18, 2018 meeting with the Potential Acquiror); Ex. C at 243:4-255:20 (Kimberley Van Der Zon's testimony about a non-privileged discussion at the June 27, 2018 meeting about the Female Employee's sexual harassment allegations); Ex. D at 241:4-251:20 (Paul Guenther's testimony about non-privileged discussions at the June 27 Board meeting with respect to bullying and sabotage of the Potential Transaction); Ex. E at 284:1-287:10 (Leonard Riggio's testimony about non-privileged discussions at the June 27 Board meeting). Indeed, the decision that the Board made—that Plaintiff had violated the Company's policies—is a factual, not a legal, determination. Plaintiff has

---

discussion of *Chapadeau* and discussing waiver *in dicta* under Illinois law). *See also Jules Rabin Assocs., Inc.* v. *Landon*, 38 N.Y.2d 827 (1976) (libel case with no discussion of *Chapadeau* or waiver); *Hollander* v. *Long Island Plastic Surgical Grp., P.C.*, 104 A.D.2d 357 (2d Dep't 1984) (libel case applying "qualified privilege based on the common-interest doctrine"; no discussion of *Chapadeau* or waiver).

had the opportunity to cross-examine each of these witnesses on these underlying events and facts.

The *Chapadeau* standard focuses on the defendant's processes in issuing the challenged statement and can be met by "objective proof, without the need to resort to an exploration of the defendant's subjective mental state." *Karaduman* v. *Newsday, Inc.*, 51 N.Y.2d 531, 545 (1980). Plaintiff concedes this in his reply brief. (*See* Pl.'s Reply Br. 8.) This should end the waiver inquiry as it is clear that Plaintiff cannot demonstrate that the privileged Paul, Weiss memorandum is his only means of carrying his evidentiary burden under the *Chapadeau* standard. Moreover, as a factual matter, each of the four Board members deposed has testified that their decision—the decision reported in the press release—was made based on the facts regarding Plaintiff's conduct as relayed to them through numerous non-privileged conversations. *See, e.g., supra* at 6. Plaintiff has had the opportunity to cross-examine each of these Board members on their decision-making process. Further, Plaintiff has in fact acquired information through the deposition testimony of those Board members that reflects the Board's subjective state of mind during the time period in which it decided to terminate Plaintiff for Company violations and issue the press release. *See, e.g.*, Ex. B, 247:25-248:5 (Plaintiff's counsel asking Al Ferrara whether he came to believe that Plaintiff's conduct at the June 18 meeting led the Potential Acquiror to withdraw, to which Ferrara testified, "Well, yeah. I mean, in my mind, yeah, it had to be."); Ex. D, 221:7-12 (Paul Guenther's testimony that "the Board was stunned" when Leonard Riggio informed them about the sexual harassment allegations against Plaintiff "[a]nd a discussion ensued as to what the result should be"); Ex. D, 227:7-18 (Paul Guenther's testimony that in his opinion, "the sexual abuse was sufficient").

In sum, Plaintiff has not shown that any element of his defamation claim or of Barnes & Noble's defenses to that claim can "only" be proven by examination of the privileged memorandum Paul, Weiss prepared for the Board of Directors. Nor has Plaintiff otherwise shown that fairness requires that this Court take the extraordinary step of breaching Barnes & Noble's privilege.

\* \* \*

For the reasons set forth above and at the September 13, 2019 oral argument, Barnes & Noble respectfully requests that the Court find that there was no waiver with respect to the Paul, Weiss memorandum.

Respectfully submitted,

/s/ Liza M. Velazquez
Liza M. Velazquez

cc: Counsel of Record (via ECF and unredacted exhibits via email)
Judge Gorenstein (unredacted exhibits by hand)